**CALLINAN v. FEDERAL CASH REGISTER CO. et al.**

No. 1341.

District Court, W. D. Missouri, W. D.

Oct. 4, 1946.

See, also, D.C., 3 F.R.D. 177.

Granoff & Meyerhardt, of Kansas City, Mo., for plaintiff.

A. J. Haverstick, of St. Louis, Mo., for General Engineering & Mfg. Co.

Sam D. Parker and Lyman Field, both of Kansas City, Mo., for Federal Cash Register Co. and Kyle W. Leeds.

REEVES, District Judge.

This is an action on five counts, wherein the first three counts are for money had and received and the last two are in the nature of damages for fraud. Plaintiff has dismissed Count 4, so that the case proceeded and is now pending on the evidence adduced on Counts 1, 2, 3, and 5. Plaintiff has also dismissed as to the defendant General Engineering and Manufacturing Company, a corporation.

Count 1 is for $116.96, an alleged balance on an account involved in the sale of certain specified machine tools. The defendants, in effect, admit the correctness of the balance but claim that it was adjusted in the transactions of Count 5. The same may be said of the amount claimed in Count 2 in the sum of $1,334.16; also in Count 3, where there is a claimed balance of $3,596.64. Since Count 4 was dismissed, the whole issue is on the transactions involved in Count 5.

It appears from the evidence that the plaintiff was an import and export merchant of London, England. The defendants, prior to the late war, dealt with the plaintiff by selling to him cash registers. The name

would imply that the corporate defendant was engaged in the cash register business. Out of military necessity the importation of cash registers into England was prohibited. However, on account of the war situation it was imperative and permissible to import into England machine tools needful in preparation for the defense of that country and for its military activities. In order to maintain continuity of business with defendants the plaintiff arranged with the defendants to purchase for him certain machine tools. Since the corporate defendant did not produce such tools, it, with the personal defendant Mr. Leeds, made purchase contracts with the General Engineering and Manufacturing Company, a corporation of St. Louis, Missouri.

It was a co-operative and joint enterprise between the plaintiff and the defendants. A question arose early in the transactions with respect to the division of profits. The initial transactions were adjusted upon an even division of profits. This was not satisfactory to the plaintiff, and, after negotiations, it was agreed that the defendants should be compensated upon a basis of 3% of the list price of the machines purchased for and on behalf of the plaintiff, and, after the deduction of certain expenses, including such 3% commission allowed the defendants, the profits accruing to the plaintiff would be the amount left out of a 17% discount from the list price. All of the transactions were carried on upon this basis. Since the plaintiff had not previously engaged in the importation of machine tools, the purchasing authorities in England did not license him to deal directly in the importation of such machines. However, he arranged through certain shippers in England for the transaction of business through them and payments were made on deposits and purchases through such shippers.

In November and December of 1940 the plaintiff caused the defendants to purchase from General Engineering and Manufacturing Company 15 machines known as Kelly Heavy Duty Shapers. Although the defendants had previously supplied price lists to the plaintiff, yet they had notified him that after a certain date there would be an advance in such prices. Upon the last machines purchased invoices were issued showing an advance over the previously listed prices. Deposits were made by the plaintiff, or some one for him, at one time in the sum of $6,875, at another, $1,053, or a total of $7,928. The deposit was made upon the basis of the higher prices for the 15 Kelly Shapers. Plaintiff discovered from data supplied by the defendants and General Engineering and Manufacturing Company that the prices were not in fact advanced, save only that they were inflated for the purpose of creating an extra profit for the defendants. This was meant to and actually accomplished a deception on plaintiff.

General Engineering and Manufacturing Company put forward an invoice showing the inflated price to be delivered to the plaintiff whereas it submitted to the defendants a true invoice and upon which latter invoice settlement would actually be made by the defendants. The discovery of this deception by the authorities in England caused a furor. It became necessary for the plaintiff to exonerate himself from blame in connection with the inflated and deceptive prices. He was able to do this but the authorities thereupon caused the defendants, as well as plaintiff, to be by-passed and payment was made for the balance due on the true invoice direct to General Engineering and Manufacturing Company. Apparently, in the confusion arising from this attempted deception no accounting has yet been made with respect to the deposits aggregating $7,928 upon the basis of the inflated invoices. It is to be properly presumed that the defendants who received such deposit made advance payments out of it in accordance with the true invoices. The defendants do not dispute the item of $3,596.64 due plaintiff, as set forth in the third count, computed upon the true invoices.

The plaintiff on its part claims that there is a balance due out of the said deposit in the sum of $2,391.22; that, in addition thereto, there was an overpayment of $1,149.74, and that, upon this, a commission of $37.50 was computed by the defendants.

The aggregate of the unused balance of the deposit and the overpayment and the wrongful commission on such payment aggregates $3,578.46, and it is for this sum

that the plaintiff is entitled to have judgment on the fifth count.

In that count the plaintiff sues for alleged damages in the sum of $4,805.58. The plaintiff arrives at that amount by contending that the inflated invoices were actually paid. Such was not the fact. The initial deposits were made on the basis of the inflated invoices but the final payments were made on the basis of the true invoices, which, as stated, results in an amount due plaintiff in the sum of $3,578.46, in addition to the above admitted amount named in the third count.

It was the contention of the defendants that, after the discovery of the inflated invoices, payments were made direct to General Engineering and Manufacturing Company and therefore they did not receive any part of the payment. This is true so far as the balance was concerned. However, the undisputed testimony shows that the defendants received $7,928 as advance payments on account of the inflated invoices and that the balance of that amount has not been accounted for. Presumably part of it was applied on the true invoice submitted by the General Engineering and Manufacturing Company to the defendants. A review of the evidence given by the defendant Carl W. Leeds would indicate that he did not dispute, as contended by the plaintiff, that he and his company had in fact received the advance deposit.

In view of the foregoing, the plaintiff is entitled to judgment in the amount sued for in his petition, namely, on Count 1 $116.96, with interest at 6% per annum from August 1, 1940, on Count 2 $1,334.16 with interest from September 1, 1940 at 6% per annum, on Count 3 $3,596.64 with interest from January 1, 1941 at 6% per annum, and on Count 5 $3598.46 with interest from January 1, 1941 at 6% per annum, together with costs herein incurred.

Whatever differences there may have been between counsel on the first count as to the amount due plaintiff, an independent computation has been made, and this verified the correctness of plaintiff's claim.

While it may be presumed that prices were wrongfully inflated on other than the third count of the complaint, yet there is no conclusive evidence of that fact and no basis for judgment against defendants either in the pleadings or in the evidence.

Counsel for the plaintiff will prepare a journal entry.